Filed 6/16/23  Knight v. Rosanta Company CA1/4

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION FOUR

| | |
|---|---|
| JERRY KNIGHT,<br><br>        Plaintiff, Cross-complainant and Respondent,<br><br>v.<br><br>ROSANTA COMPANY,<br><br>        Defendant, Cross-defendant and Appellant. | A163554<br><br>(Sonoma County Super. Ct. No. SCV-262559) |

Plaintiff Jerry Knight owns the River Theater in Guerneville, California. Defendant Rosanta Company (Rosanta) owns commercial property that adjoins and surrounds the theater on three sides. Rosanta's property includes additional commercial buildings and an undeveloped area used for parking. At trial, evidence was presented that these two properties were originally a single parcel owned by Rosanta. In the 1950's, Rosanta subdivided its lot, carving out a separate parcel for the theater building. Ownership of the theater has changed hands several times in the last 60 years, most recently to Knight in 2010.[1]

---

[1] Attached as appendix A is a survey map, admitted into evidence at trial, which provides a visual overview of the two properties.

Knight's operation of the theater, like that of each prior owner, encroaches on Rosanta's property at several locations. As relevant here, theater guests often park in the undeveloped lot located behind the theater, which can be accessed through gated driveways on the east and west sides of Rosanta's property. From the parking lot, guests access the theater's side doors through a set of stairs on the east side of the building or a ramp on the west side of the building, both of which are located on Rosanta's property. There are also fenced storage areas adjacent to the rear of the theater that sit on Rosanta's property.[2]

The historically workable relationship between the various theater owners and Rosanta soured sometime after Knight's purchase when Rosanta sought to further develop its property. As a result, in 2018, Knight filed a complaint against Rosanta seeking to establish his legal right to permanent and continued use of Rosanta's property based on the longstanding use by him and the previous property owners. Rosanta filed a cross-complaint against Knight seeking to preclude Knight's continued use of, among other areas, the parking area including gates and driveways, the ramp, and stairs that lead to the theater's side exits and the storage areas behind the theater.

Following a bench trial, the court issued a statement of decision making findings of fact regarding the uses of the property and entered a judgment in favor of Knight establishing his right to several easements supporting his permanent and continued use of Rosanta's property. After trial, the court modified the judgment to eliminate Knight's right to use the east gate and driveway to access the parking lot and to add a requirement

---

[2] Attached as appendix B are photos, admitted into evidence at trial, which depict the stairs, ramp and storage areas.

that Knight maintain the ramp, stairs and other improvements on Rosanta's property as a condition of his continued use.

On appeal, Rosanta contends, among other things, that the judgment must be reversed because the easements permitting Knight's use of the ramp and fenced storage areas are exclusive easements prohibited by law. In his cross-appeal, Knight contends the court erred by modifying the judgment. We find no error and affirm the modified judgment.

## Factual Background

The properties at issue in this case share a lengthy history that is necessary to understand the present dispute. In 1947, Rosanta purchased a large parcel in Guerneville, California, that consisted of an approximately 600-seat theater, adjacent commercial buildings and an unimproved area located behind the properties. The theater is a rectangular building with its primary entrance on Main Street. One of the commercial buildings, now operating as a restaurant, sits to west side of the theater and shares a wall with the theater. Another commercial building, once operated as a cocktail lounge or nightclub, sits to the other side of the theater with a small, gated alleyway running between the two buildings. Shortly after Rosanta purchased the parcel, another commercial building, once used as a post office, was built next to the former nightclub. In other words, the theater is situated towards the middle of a row of four commercial buildings, all facing Main Street.

In 1951, Rosanta formed a subsidiary company known as the River Grove Theater Company (Theater Company). Rosanta then created a separate parcel for the theater, consisting of only the walls of the theater and conveyed that parcel to the Theater Company. The property retained by Rosanta surrounded the theater on three sides. At that time, Rosanta and the

3

Theater Company entered into an agreement acknowledging the shared wall between the theater and the building to its west and agreeing to various obligations regarding its repair and continued use in the event that either party decided to erect a new building on their respective properties.

In 1965, Rosanta dissolved the Theater Company and sold the theater, thus ending almost two decades of ownership. Between 1965 and 2010, several third parties owned the theater. Throughout the years, however, the property continued to operate as an entertainment venue, sometimes showing movies, other times hosting large live music events. Testimony established that the undeveloped area in the rear of the theater was consistently used for parking by the theater owners and guests and that the theater was regularly accessed from the parking lot via the side doors of the theater.

In 2010, Knight purchased the theater. At the time of his purchase, the original double doors on the west side of the theatre opened onto the wooden ramp (one of the structures which is the subject of Rosanta's appeal) that leads to the rear of the building. These doors were used as emergency exits, to move equipment in and out of the theater and for access to the theatre by people with disabilities. Testimony established that in 1965, when the theater was first sold to a third party, the double doors on the west side of the theater led to a wooden porch and a set of stairs led from the porch to the parking area. Although no testimony was presented as to when the ramp, which replaced the staircase, was built, witness testimony established that the ramp existed in the late 1980's and was used at that time by performers to load equipment in and out of the theater from their vehicles which were parked in the back.

On the east side of the theater, a second set of outward-opening double doors open to the alley that runs to the front of the building and to a set of stairs that leads to the to the rear of the building. Witness testimony established the stairs existence since at least the late 1960's. The theater has a recorded easement for use of the alleyway for egress and ingress.

The undeveloped area at the rear of the theater can be accessed by vehicles from two directions. To the east of the theatre, it can be accessed through a gate next to the old post office on Main Street and a road that runs the eastern perimeter of Rosanta's property. It can also be accessed via a gated access road on the western perimeter of Rosanta's property. Knight, like the prior owners, has regularly used the area for parking.

Finally, there are two fenced storage areas (the other structures at issue in Rosanta's appeal) that are adjacent to each other and located immediately behind the theater. One is located at the base of the stairs that lead to the southeast corner of the theater and the other is located under the cantilevered stage, which extends over the lot about 7.5 feet at a height of 12 to 15 feet off the ground. Knight testified that the storage areas were there when he purchased the theater.

## Procedural Background

On June 1, 2018, Knight filed a complaint against Rosanta alleging causes of action for declaratory relief for prescriptive easement, easement by implication, equitable easement, and injunctive relief preventing interference with easement rights. Rosanta filed a cross-complaint against Knight alleging causes of action for declaratory relief, quiet title, injunctive relief and ejectment.

On June 17, 2021, following an 11-day bench trial, the court entered judgment granting Knight "an easement by prescription and easement by

implication" for the "full beneficial use" of that portion of Rosanta's property located to the rear of the theater building. Specifically, the court delineated Knight's permissible use of Rosanta's property as including ingress and egress through the westerly gate and perimeter road and the easterly gate and perimeter road and parking in the rear lot "as defined by the daily use of the owner of the River Theater" and "as needed use by workers, material men, deliveries, actors, and others including patrons, on an as-needed but temporary basis." The court also confirmed "the existence of the permanent encroachments of partial walls that have been described in the evidence including all piping, sanitary pipes, elevated building additions, all concrete pathways to and from the building known as the River Theater." The court further confirmed "the continued permanent use and encroachment of the westerly ramp and the easterly staircase that leads to the River Theater [and] . . . continued permanent use and encroachment of the metal fence and storage area surrounding the rear of the building . . . as it exists on the date of this judgment." The judgment denies all relief sought by Rosanta in its cross-complaint.

On August 30, 2021, the court granted in part Rosanta's postjudgment motion to modify the judgment by striking the provision of the judgment that granted Knight ingress and egress through the easterly gate and perimeter road and by adding the requirement that plaintiff maintain the ramp, staircase and other improvements in conformity with all building codes.

Rosanta timely filed a notice of appeal from the modified judgment. Knight timely filed a notice of cross-appeal challenging the court's ruling on Rosanta's post-judgment motions.

## Discussion

### 1. Rosanta's Appeal

On appeal, Rosanta challenges only the easements granted to Knight for use of the ramp and the storage areas.[3] Rosanta contends the judgment must be reversed because the trial court improperly granted Knight "exclusive prescriptive easements" over the ramp and the storage areas. As explained below, we find no error and affirm the judgment.

Easements provide a non-owner a right to use another's land for certain specified purposes. "Generally, easements are distinguished from estates in land such as ownership in fee, tenancy in common, joint tenancy, and leaseholds, which are forms of possession of land. [Citations.] ' "An easement involves primarily the privilege of doing a certain act on, or to the detriment of, another's property." [Citation.] An easement gives a nonpossessory and restricted right to a specific use or activity upon another's property, which right must be less than the right of ownership. [Citation.]' [Citations.] Thus, '[t]he owner of the easement is not the owner of the property, but merely the possessor of a "right to use someone's land for a specified purpose. . . ." ' " (*Blackmore v. Powell* (2007) 150 Cal.App.4th 1593, 1598.)

There are different types of easements. The trial court found that Knight had both a prescriptive easement and an easement by implication. "To establish a prescriptive easement the party claiming it must show use of

---

[3] Rosanta expressly waives any challenge to the additional easements granted by the court regarding "the 'easterly stairs,' 'partial walls that have been described in the evidence, piping, sanitary pipes, elevated building additions, concrete pathways to and from the building known as the River Theater.' " Although the parking easement is not expressly listed as excluded from the scope its appeal, Rosanta makes no argument challenging the judgment with respect to that easement. Accordingly, we deem any issues regarding the parking easement waived on appeal.

the property that has been 'open, notorious, continuous, and adverse for an uninterrupted period of five years.' [Citations.] ' "[A]n essential element necessary to the establishment of a prescriptive easement is visible, open and notorious use sufficient to impart actual or constructive notice of the use to the owner of the servient tenement." ' " (*Husain v. California Pac. Bank* (2021) 61 Cal.App.5th 717, 725 (*Husain*); CACI No. 4901.)

"The existence or nonexistence of each of the elements of a prescriptive easement is a question of fact. [Citation.] . . . The burden of proof as to the elements of a prescriptive easement is on the one asserting the claim." (*Husain*, *supra*, 61 Cal.App.5th at p. 726.) We review the trial court's finding for substantial evidence. (*Blackmore v. Powell*, *supra*, 150 Cal.App.4th at p. 1598 & fn. 2.)

On appeal, Rosanta does not argue that the evidence is not sufficient to support the court's finding that Knight established a right to a prescriptive easement with regard to use of the ramp and storage areas.[4] Rosanta argues,

---

[4] Although Rosanta does not challenge the sufficiency of the evidence, it argues that the trial court's statement of decisions is inadequate insofar as it fails to make express findings that Knight's use of the ramp and storage areas was open and notorious for a five-year period. First, the statement of decision states "The element of open and notorious requires the use of someone else's property, and that the use is hostile to the true owner's use. That is undisputed." The statement of decision also includes a recitation of the history of the property and discusses the ongoing use of Rosanta's property by Knight and prior owners of the theater for a period of well over five years. To the extent the statement of decision fails to separately address the elements of a prescriptive easement with regard to the use of the ramp and storage areas, any error is undoubtedly harmless given Rosanta's implicit concession that substantial evidence supports the judgment in this regard. (See *Thompson v. Asimos* (2016) 6 Cal.App.5th 970, 983 ["Even though a court fails to make a finding on a particular matter, if the judgment is otherwise supported, the omission is harmless error unless the evidence is

8

however, that the judgment must be reversed because a prescriptive easement cannot be based on an exclusive use of the area in question and Knight's use of the ramp and storage areas are properly characterized as exclusive.

"An exclusive easement is the right of the holder of the easement to exclude everyone, including the servient owner, from use of the land within the easement boundaries." (*Rye v. Tahoe Truckee Sierra Disposal Co., Inc.* (2013) 222 Cal.App.4th 84, 93.) "In contrast to a *non-exclusive* easement, wherein the servient owner . . . may continue to use the easement area so long as such use does not unreasonably interfere with the use by the dominant owner . . . , an *exclusive* easement only permits the dominant owner to use the easement area." (*Romero v. Shih* (2022) 78 Cal.App.5th 326, 349, rev. granted Aug. 10, 2022, S275023.) "[A]n easement is nonexclusive if the servient landowner shares in the benefit of the easement." (*Hansen v. Sandridge Partners, L.P.* (2018) 22 Cal.App.5th 1020, 1036.)

"[E]xclusive easements generally are not favored by the courts." (*Romero v. Shih*, *supra*, 78 Cal.App.5th at p. 349.) This is because prescriptive easements that create "the practical equivalent of an estate" impermissibly disregard "the classical distinction in real property law between ownership and use.' " (*Hansen v. Sandridge Partners, L.P.*, *supra*, 22 Cal.App.5th at p. 1033.)

Rosanta contends the easements granted by the court are improper exclusive easements because the fences around the storage area preclude entirely its use of that area and that the ramp exclusively serves the theater.

Whether the easements are "exclusive" is factual question for the trial

sufficient to sustain a finding in favor of the complaining party which would have the effect of countervailing or destroying other findings.' "].)

court, subject to a substantial evidence review on appeal. (*Romero v. Shih*, *supra*, 78 Cal.App.5th 326, 348, 353 ["Whether an exclusive easement constitutes fee title or amounts to ownership in fee, rather than an easement, depends on the circumstances of the case."].) "In determining whether a conveyance creates easement or estate, courts look to the extent to which the conveyance limits the uses available to the grantor; an estate entitles the owner to the exclusive occupation of a portion of the earth's surface; that is, the property owner 'would not be able to use the [d]isputed [l]and for any "practical purpose." ' " (*Ibid*.) The issue, then, was whether Rosanta's ability to use the ramp and storage area was limited, and if so to what extent.[5]

Here, the trial court found that Knight's easement for use of the ramp and storage areas were not exclusive because the judgment does not preclude Rosanta's shared use of those areas. In reaching this decision, the court found "the visual presentation of drawings, maps, and photographs of great assistance" and considered "its own site visit, as well as testimony from expert witnesses and lay witnesses describing the site and buildings." Much of the testimony in this case regarding the historic use of the property was given by witnesses who were advanced in age and who were testifying to what they remembered of the properties from sometimes more than 40 years prior. Some details conflict and others are missing. Nonetheless, the record

---

[5] Rosanta suggests this court should review the issue de novo because the facts are undisputed. While the historic facts may be undisputed, the reasonable inferences regarding potential future use of the easement and the ultimate question of whether Rosanta can use the area for any practical purpose are disputed. Even if the court's finding was based on some undisputed facts, it "must be affirmed under the rule of conflicting inferences by which we must indulge all reasonable inferences in favor of the . . . party that prevailed below." (*Husain, supra*, 61 Cal.App.5th at p. 732 ["where [plaintiff's] essential position is that the facts are undisputed, the conflicting inference rule pertains even if the facts were undisputed"].)

establishes a history of communal use of the undeveloped area behind the buildings. The court specifically found that the evidence established that Rosanta and Theater Company, at the time of the conveyance, contemplated a "symbiotic and continued relationship." The court reasonably relied on this history in finding that shared use of the ramp and storage areas was possible. (*Husain, supra*, 61 Cal.App.5th at p. 732 [prescriptive easement is question of fact based upon all the circumstances, including " ' "the relation of the parties, their conduct, the relative location of the properties, and other factors" ' "].)

As noted by Knight, although the ramp currently provides access only to the theater, it could in the future be used to access the restaurant adjacent to the theater for "ingress, egress, maintenance, fire protection, safety [or] simple security." The judgment does not preclude Rosanta's extension or use of the ramp in this manner. With respect to the storage areas, the court observed, "what I envision" as to the fenced and cantilevered areas, is "if Rosanta wants to gain access, there's a shared key and shared access, and they can use it."

Given the intertwined history of the properties, including the almost two decades that Rosanta owned both properties, these encroachments and the relatively limited burdens they place on Rosanta's property are entirely reasonable. When an easement is "nonexclusive" the common users " 'have to accommodate each other.' " (*Scruby v. Vintage Grapevine Inc*. (1995) 37 Cal.App.4th 697, 703.) In *Scruby, supra*, 37 Cal.App.4th at page 707, the court held that the owner of the servient estate could slightly reconfigure the location of a driveway, on which the dominant estate had an easement, to accommodate a " 'myriad of safety questions and concerns' " regarding the entrance to the servient estate. As in *Scruby*, Rosanta retains the right to

11

modify the ramp and storage areas so long as it does not unreasonably interfere with Knight's easements. As such, the easements permit practical uses of Rosanta's property consistent with Knight's easement. [6]

The cases cited by Rosanta are distinguishable. In *Silacci v. Abramson* (1996) 45 Cal.App.4th 558, 564, the court reversed a prescriptive easement that permitted a landowner to fence in a portion of his neighbor's land for his exclusive use. The court held that "an exclusive prescriptive easement, 'which as a practical matter completely prohibits the true owner from using his land,' [citation] will not be granted in a case . . . involving a garden-variety residential boundary encroachment." (See also *Harrison v. Welch* (2004) 116 Cal.App.4th 1084, 1092–1093 [recognizing rule that an exclusive prescriptive easement "will not be granted in a case . . . involving a garden-variety residential boundary encroachment"]; *Mehdizadeh v. Mincer* (1996) 46 Cal.App.4th 1296, 1305–1306 [reversing improper exclusive prescriptive

---

[6] Contrary to Rosanta's argument, the statement of decision is not deficient for lack of an express finding that the easements are not exclusive. " '[T]he trial court is not required to respond point by point to the issues posed in a request for statement of decision. The court's statement of decision is sufficient if it fairly discloses the court's determination as to the ultimate facts and material issues in the case.' [Citations.] 'When this rule is applied, the term "ultimate fact" generally refers to a core fact, such as an essential element of a claim.' (*Thompson v. Asimos, supra*, 6 Cal.App.5th 970, 983.) As explained above, the judgment does not award Knight exclusive use of the ramp and storage areas. Accordingly, the court reasonably overruled the Rosanta's objection on the ground that it "merely express[es] . . . disagreement with the court's decision and attempts to reargue portions of defendant's case." The statement of decision fairly discloses the court's determination as to the ultimate facts and material issues in the case. While it may have been helpful if the court had made a specific finding that there were not exclusive easements, the court was not required to address explicitly all subsidiary determinations encompassed within its findings of ultimate fact, or to use the exact terminology proposed in objections to the tentative statement of decision.

easement that permits landowner to maintain fence on neighbor's land thereby divesting the neighbor "of nearly all rights that owners customarily have in residential property"].) We agree with Knight that this case does not involve a garden-variety, boundary dispute between residential neighbors. Unlike those cases, this case involves a dispute between commercial property owners and the dispute was largely created by Rosanta's original subdivision of its property and subsequent operation of the theater. In any event, as discussed above, the ramp and fences surrounding the storage areas do not necessarily preclude Rosanta's shared use of those areas "so long as such use does not unreasonably interfere with" Knight's use of those areas for theater access and storage. (*Romero v. Shih, supra,* 78 Cal.App.5th at p. 349.)[7]

In sum, the court did not err by granting Knight prescriptive easements for use of the ramp and storage areas. In light of this conclusion, we need not address Rosanta's additional argument that the evidence does not support implied easements for the same use.

---

[7] In *Otay Water Dist. v. Beckwith* (1991) 1 Cal.App.4th 1041, the court upheld an easement granting a water district exclusive, but restricted use of a reservoir on neighboring land. Subsequent cases have read *Otay* as supporting an exception allowing for exclusive prescriptive easements where they serve "important essential public health and safety purposes." (*Romero v. Shih, supra*, 78 Cal.App.5th at p. 352.) The parties dispute whether the easements at issue on appeal would be permitted under such an exception. Certainly, evidence was presented that the ramp was used to enter and exit the theater in the event of an emergency and the trial court found that the metal fencing surrounding the back of the theater was necessary to protect the gas and water tanks from trespassers. In light of our conclusion that the easements were not exclusive, we need not resolve this issue. Knight's request for judicial notice of the provisions of the California Building Code that require a building with an occupant capacity between 500 and 1000 persons to have a minimum of three exits with outward-swinging doors (Cal. Code Regs., tit. 24, §§ 1006.2.1.1, 1010.1.2.1) is denied as unnecessary.

## 2. Knight's Cross-appeal

Knight contends the court's order modifying the judgment to remove his ingress and egress to the rear lot through the easterly gate and adding the requirement that he "maintain the westerly ramp and the easterly staircase and other improvements in conformance with all building codes" should be reversed. He argues: (1) the relief granted exceeded that requested in Rosanta's motion to vacate; (2) the modification of the easement with regard to the eastern gate is not supported by the record; and (3) the modification requiring Knight to maintain the improvements is vague and overbroad.

Initially, we reject Knight's argument that the court lacked authority to modify the judgment. Following the entry of judgment, Rosanta filed a motion to vacate and a motion for new trial. Rosanta's motion for new trial argued that the evidence was insufficient to establish an easement for access to the rear lot through the easterly gate. Rosanta's moving papers cited the court's authority under Code of Civil Procedure section 662, following a court trial, to modify or vacate the judgment in ruling on a motion for new trial. Rosanta's motion to vacate did not address the gate. Both of Rosanta's motions repeated the arguments advanced on appeal that the judgment granted Knight improper exclusive easements over the ramp and storage areas.

At the hearing, the trial court indicated its tentative decision was not to set aside the judgment in its entirety but to modify it pursuant to the authority cited by Rosanta. Also at the hearing, Rosanta requested that the court add the maintenance requirement if it did not strike the easements for the ramp, stairs and storage areas. After argument, the court entered the order modifying the judgment. The order reads: "The Motion for New trial . . .

14

is DENIED[.] The Motion to Vacate or Modify the Judgment . . . is GRANTED IN PART and DENIED IN PART."

The court had authority to modify the judgment under Code of Civil Procedure section 662.[8] When a trial court, in ruling on a motion for new trial, "determines to change its findings or judgment instead of retrying the case, 'the proper practice is to deny the motion for new trial and, in conjunction with such ruling, to grant the alternative relief provided in said section [662].' " (*Avery v. Associated Seed Growers, Inc.* (1963) 211 Cal.App.2d 613, 621, 625 ["It is the purpose of section 662 to have the trial court correct previous errors so as to subserve the ends of justice."]; see also *Medak v. Cox* (1970) 12 Cal.App.3d 70, 74 ["[t]he proper procedure is for the trial court to deny the motion for new trial and grant the alternative relief stated under Code of Civil Procedure section 662, i.e., a modification of findings and judgment."].)

The record in this case makes clear the court intended to modify the judgment under the authority granted to the court under Code of Civil Procedure section 662. (See *Medak v. Cox*, *supra*, 12 Cal.App.3d at p. 74 ["Although there is no explicit statement to the effect, it is clear that the trial court was proceeding under the authority granted it under Code of Civil Procedure section 662."].) As Rosanta argues, "Knight's claim that the trial

---

[8] Code of Civil Procedure section 662 provides in relevant part that in ruling on a motion for new trial "in a cause tried without a jury, the court may, on such terms as may be just, change or add to the statement of decision, modify the judgment, in whole or in part, vacate the judgment, in whole or in part, and grant a new trial on all or part of the issues, or, in lieu of granting a new trial, may vacate and set aside the statement of decision and judgment and reopen the case for further proceedings and the introduction of additional evidence with the same effect as if the case had been reopened after the submission thereof and before a decision had been filed or judgment rendered."

court's written ruling and order appears to base its modification of the Judgment on Rosanta's Motion to Vacate, as opposed to Rosanta's motion for new trial, is an unsupported reliance on form over function." The court's order granting in part "Rosanta's motion to . . . modify the judgment" is consistent with the court's exercise of authority under [Code of Civil Procedure] section 662.[9]

Contrary to Knight's argument, the court did not err in striking the easement for the easterly gate. In ruling on Rosanta's motion for a new trial, "the trial court was authorized to review its previous findings, conclusions and judgment and to vacate them and to make new findings, conclusions and judgment." (*Turner v. Citizens Nat'l Bank* (1962) 206 Cal.App.2d 193, 199; *Warren Southwest, Inc. v. Wicks* (1969) 276 Cal.App.2d 152, 155 [trial court can reweigh evidence, make new findings, and reconsider prior legal rulings under Code of Civil Procedure section 662].) Inherent in the court's order striking the easement is a finding that plaintiff did not meet its burden of establishing the existence of the easement. "[W]hen an appellant challenges a trial court's conclusion that the appellant failed to carry its burden of proof at

---

[9] We reject Knight's argument that Rosanta's failure to appeal the denial of its motion for new trial somehow precludes it from asserting this argument on appeal. As set forth above, the court properly denied the motion for new trial and exercised its authority to modify the judgment. Likewise, we find no merit to Knight's argument that he was not given sufficient notice of the proposed modifications. Rosanta's request to strike the easement with respect to access to the rear parking lot through the easterly gate and road was included in the moving papers and addressed at length at the hearing. Although Rosanta did not request that the maintenance requirement be added until the end of the hearing, the court indicated its intent to include the requirement and gave Knight's counsel an opportunity to be heard. Knight briefly opposed the request but did not request additional time to respond. Knight demonstrates no prejudice on appeal as a result of the timing of Rosanta's request.

16

trial, 'the question for a reviewing court becomes whether the evidence compels a finding in favor of the appellant as a matter of law.' " (*Vieira Enterprises, Inc. v. McCoy* (2017) 8 Cal.App.5th 1057, 1074.) The evidence presented at trial did not establish Knight's right to the easement as a matter of law.

At trial, evidence was presented that since at least 1950 the rear lot was accessible through a driveway that passed to the east of the old post office. Knight testified that the driveway, which was wide enough for passage of a car or small truck, had two locked gates on it. No evidence was presented regarding use of that road by Knight or the previous owners. Instead, at the hearing on the post-trial motions, Knight argued that the court could draw the reasonable inference that theater goers used that driveway to get into and out of the parking area. Rosanta argued, in contrast, that given the location of the road to the east of its commercial properties, a reasonable inference could be drawn that the road was intended to and had only served the needs of the tenants occupying the closer commercial buildings. Given the paucity of evidence with respect to this particular easement, we cannot conclude that the court erred in resolving Knight's claim in favor of Rosanta.

Finally, the requirement that Knight maintain the ramp, stairs and storage areas in accordance with building codes is not vague or ambiguous. Under the modified judgment, Knight must maintain the stairs, ramp and "other improvements" in accordance with the building code. "Other improvements" reasonably includes all improvements identified in paragraph five including, the partial walls, piping, sanitary pipes, elevated building additions, concrete pathways and the storage areas at the rear of the building. The scope of the maintenance requirement is not vague or ambiguous insofar as the improvements must be maintained in accordance

with the building code. The maintenance requirement is consistent with Civil Code section 845, subdivision (a), which requires the owner of an easement "maintain it in repair." Knight's argument, based on the contentiousness of the relationship between he and Rosanta, that "Rosanta's intent is to put [him] in a Catch-22 whereby he is 'required' to maintain Rosanta's property, but can be precluded from doing so because he is not the owner," is misplaced. It is a well-recognized rule that Knight's prescriptive easements carry with them "the right to make repairs, renewals, and replacements." (*Ward v. Monrovia* (1940) 16 Cal.2d 815, 821–822; see also *Dolnikov v. Ekizian* (2013) 222 Cal.App.4th 419, 428 [easement includes the right to make " 'repairs, renewals and replacements on the property that is servient to the easement' "].) A corollary to this rule is that the "repairs, renewals and replacements" must be done "in a reasonable manner without an undue burden on the servient owner." (*Los Angeles v. Howard* (1966) 244 Cal.App.2d 538, 543.) Knight speculates that the requirement will spark more litigation, but such concern does not render the provision vague or ambiguous.

Accordingly, we affirm the order modifying the judgment.

## Disposition

The judgment, as modified by the trial court's August 2021 order, is affirmed. The parties shall bear their own costs on appeal.

18

_____
Fineman, J.*

WE CONCUR:


_____
Streeter, Acting P. J.



_____
Goldman, J.




A163554

---

* Judge of the Superior Court of California, County of San Mateo, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.